**Not for Publication**

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| **INVENTIV HEALTH CONSULTING, INC.,**<br><br>Plaintiff,<br><br>v.<br><br>**SUMMER ATKINSON,**<br><br>Defendant. | Civil Action No. 18-12560 (ES) (SCM)<br><br>OPINION |

**SALAS, DISTRICT JUDGE**

Before the Court is defendant Summer Atkinson's ("Defendant") motion to dismiss plaintiff inVentiv Health Consulting Inc.'s ("Plaintiff" or "inVentiv") amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (D.E. No. 6). The Court has jurisdiction pursuant to 28 U.S.C. § 1332. Having considered the parties' submissions, the Court decides this matter without oral argument. *See* Fed. R. Civ. P. 78(b). As set forth below, the Court DENIES Defendant's motion to dismiss.

## I.     Background

Plaintiff brings this action against Defendant, its former employee, to obtain injunctive relief and damages for "(i) breach of contract; (ii) tortious interference with contract; (iii) tortious interference with prospective economic advantage; (iv) misappropriation of trade secrets under federal and state law; and (v) civil conspiracy." (D.E. No. 5, Amended Complaint ("Am. Compl.") at 1–2). The Court will "set out facts as they appear in the [Amended] Complaint." *See Bistrian v. Levi*, 696 F.3d 352, 358 n.1 (3d Cir. 2012).

Plaintiff is a North Carolina corporation with its principal place of business in Raleigh, North Carolina. (Am. Compl. ¶ 7). Plaintiff provides strategic management consulting services to biopharmaceutical and medical technology companies, and its clients primarily include pharmaceutical/biotechnology companies, medical device companies, and diagnostics companies located throughout North America, Europe, and Japan. (*Id.* ¶¶ 7 & 14). Plaintiff's consulting services include new product planning, product launch planning, strategy development and tactical solutions, portfolio strategizing, organizational development, commercialization strategy, and market development planning. (*Id.* ¶ 15).

In 2015, Defendant was working for Plaintiff on a team of employees (the "Former Employees") led by her then-managing director Alan French.[1] (*Id.* ¶ 2). The Former Employees were responsible for servicing two of Plaintiff's top pharmaceutical clients ("Client A" and "Client B" or, together, "Clients A and B").[2] (*Id.*). Defendant and the Former Employees serviced Clients A and B at Plaintiff's directive and "under the Master Services Agreements pursuant to a series of so-called statements of work thereunder." (*Id.* ¶¶ 31 & 33). Clients A and B generated "substantial revenue" for Plaintiff pursuant to their respective Master Service Agreements. (*Id.* ¶ 32).

As a condition of her employment, Defendant signed an employment agreement (D.E. No. 5-1, Exhibit 1 (the "Agreement"))[3] containing restrictive covenants that address the confidentiality and protection of Plaintiff's information, relationships, and goodwill. (*Id.* ¶ 36). Specifically,

---

[1] In addition to Defendant and French, this team included Priya Gogia, Jason Debasitis, and Jieru Zheng. (Am. Compl. ¶ 3 & n.2).

[2] "To maintain confidentiality, [the Amended Complaint] does not name individual clients," but instead uses these pseudonyms. (Am. Compl. ¶ 2 n.1).

[3] The Court may consider the Agreement as "a document integral to or explicitly relied upon in the complaint." *See, e.g.*, *Sunshine v. Reassure Am. Life Ins. Co.*, 515 F. App'x 140, 143 (3d Cir. 2013) (emphasis deleted).

Defendant agreed to the following terms, among others, in the Agreement:

- Defendant agreed that, during her employment and for a twelve-month period following the termination of her employment, she would not:

    > solicit the sale of, sell, offer or provide, any products or services that are similar to or competitive with products or services sold by, offered by, manufactured by, designed by or distributed by the Company or an Affiliated Company, to any person, company or entity which was a customer or potential customer of the Company or an Affiliated Company for such products or services and with whom [she] had direct contact or about whom [she] learned Proprietary Information at any time during the last twelve (12) months of [her] employment with the Company or an Affiliated Company. (Agreement §3(b)(iii); Am. Compl. ¶ 39).

- Defendant agreed not to "make any unauthorized use or disclosure of any Proprietary Information" during or after her employment. (Agreement § 2; Am. Compl. ¶ 41).

- Defendant agreed to "immediately return all of the Company's property" following termination of her employment. (Agreement § 5; Am. Compl. ¶ 42).

- Defendant agreed that Plaintiff would be entitled to injunctive relief and attorneys' fees in the event of a breach of any of the aforementioned provisions. (Agreement § 6; Am. Compl. ¶ 44).

The Former Employees also signed similar employment agreements containing restrictive covenants. (Am. Compl. ¶ 36; *see also* D.E. No. 5-2).

With this backdrop, Plaintiff alleges that, while still employed at inVentiv, Defendant and the Former Employees secretly began diverting work from Clients A and B to a newly formed competing company called Equitas, and that Defendant and the Former Employees eventually resigned from inVentiv and began working for Equitas. (Am. Compl. ¶¶ 69–87). Specifically, Plaintiff alleges that on November 3, 2015, French and a former employee of Client A, Daniel

3

Meletiche, incorporated and began operating Equitas—a company focused on "consulting in the life sciences industry." (*Id.* ¶¶ 55–57). According to the Amended Complaint, shortly after French and Meletiche founded Equitas, revenue from Clients A and B declined. (*Id.* ¶ 71). Plaintiff also alleges that, after the formation of Equitas, French began working on a part-time schedule before taking unpaid leave and eventually resigning on July 25, 2016. (*Id.* ¶¶ 72–73 & 75). Around the same time, between January and July 2016, various members of French's team, including Defendant and the Former Employees, resigned. (*Id.* ¶ 75). Defendant resigned on May 27, 2016, citing her desire to attend graduate school as her reason for leaving inVentiv. (*Id.* ¶¶ 75 & 80).

Several months after these departures, Plaintiff uncovered an e-mail and an electronic calendar invitation that allegedly link Defendant and the Former Employees to Equitas. (*Id.* ¶¶ 88–96). Specifically, Plaintiff alleges that on January 18, 2017, an employee of Client A accidentally sent a calendar invite to French's old inVentiv e-mail account and to two Equitas e-mail accounts belonging to Defendant and Gogia—"ssa@equitasls.com" and "pmg@equitasls.com." (*Id.* ¶¶ 88–89). Plaintiff alleges that "[t]he apparent purpose of the [c]alendar [i]nvite was to set up a conference call between Client A, on the one hand, and [Defendant], French, and Gogia, on the other." (*Id.* ¶ 89). The next day, an employee of Client A inadvertently sent an e-mail to French's old inVentiv e-mail account and to Defendant at her Equitas e-mail address. (*Id.* ¶ 90). According to Plaintiff, the body of that e-mail reveals that Equitas was working with Client A on "Project One"—a project that Defendant and the Former Employees worked on with Client A while at inVentiv. (*Id.* ¶ 91).[4]

After finding the calendar invitation and e-mail, Plaintiff conducted forensic analysis of certain Former Employees' computers; the analysis revealed that, two days before the effective

---

[4] Redacted versions of the calendar invitation and the e-mail are attached to the Amended Complaint as Exhibits 5 and 6. (D.E. Nos. 5-5 & 5-6).

4

date of French's resignation, "French accessed certain confidential information using his work computer and then immediately inserted into the computer a USB device . . . ." (*Id.* ¶ 94). This led Plaintiff to issue demand letters to Defendant, French, and Gogia explaining that they were violating their respective employment agreements and asking that each respond to the letter providing various assurances about their work for Equitas. (*Id.* ¶ 102). Each Former Employee responded to their respective demand letter through counsel but failed to provide the information or assurances requested in the letters. (*Id.* ¶ 103).

As a result, Plaintiff commenced legal action against Defendant, French, Gogia, Debasitis, Meletiche, and Equitas in Massachusetts Superior Court. (*Id.* ¶ 107). The Massachusetts court subsequently dismissed the claims against Defendant, French, Gogia, and Debasitis because they are subject to forum selection clauses located in each of their employment contracts. (*Id.*). Because Defendant's forum selection clause states that any controversy arising under the contract would be governed by the laws of New Jersey and venue would be proper in New Jersey, Plaintiff filed its complaint against Defendant in this Court on August 8, 2018. (Am. Compl. ¶¶ 45 & 107). Plaintiff filed the Amended Complaint on October 10, 2018. (D.E. No. 5). Defendant now moves to dismiss Counts II, III, IV, V, and VI of the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (D.E. No. 6; D.E. No. 6-1 ("Def. Mov. Br.")).[5]

## II. Legal Standard

To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw

---

[5] Defendant does not move to dismiss Plaintiff's breach of contract claim (Count I). (Def. Mov. Br. at 1).

the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

"When reviewing a motion to dismiss, all allegations in the complaint must be accepted as true, and the plaintiff must be given the benefit of every favorable inference to be drawn therefrom." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011) (internal quotation marks omitted). The Court is not required to accept as true "legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. And on a Rule 12(b)(6) motion, "the defendant bears the burden to show that the plaintiff has not stated a claim." *Davis v. Wells Fargo*, 824 F.3d 333, 349 (3d Cir. 2016).

### III. Discussion

#### A. Counts II and III: Tortious Interference with Contract and with Prospective Economic Advantage

Defendant argues that Plaintiff's tortious interference claims fail for two alternative reasons: (i) if the Agreement is valid and enforceable, then the economic loss doctrine bars Plaintiff's claims because the only remedy available to Plaintiff is for breach of contract (Def. Mov. Br. at 6–7), or (ii) if the Agreement is not enforceable, then Plaintiff fails to allege enough facts to demonstrate that Defendant did anything wrong—*i.e.*, acted with the requisite malice (*id.* at 10–12). At this stage, the Court declines to take an "either or" approach hinging on the validity of the contract, particularly because of Defendant's representation that she "does not at this time seek dismissal of Plaintiff's breach of contract claim," but "ultimately will maintain" that the contract is invalid (Def. Mov. Br. at 1 & 7). *See IDT Corp. v. Unlimited Recharge, Inc.*, No. 11-4992, 2012 WL 4050298, at *6 (D.N.J. Sept. 13, 2012) ("Because Defendants dispute the validity of the contracts . . . , at this stage of the litigation, it would be prejudicial to the Plaintiffs if the

Court were to dismiss the tort claims."). In any event, as discussed further below, the Court concludes that the economic loss doctrine does not bar Plaintiff's tortious interference claims at this stage in the litigation, and that Plaintiff sufficiently alleges tortious interference claims whether or not the agreement is valid.

### i. The Economic Loss Doctrine

The economic loss doctrine bars a plaintiff from recovering economic losses in tort when entitlement to losses only flows from a contract. *See Travelers Indem. Co. v. Dammann & Co., Inc.,* 594 F.3d 238, 244 (3d Cir.2010). Defendant contends that Plaintiff's tortious interference claims are barred by the economic loss doctrine because, if the Agreement is valid and enforceable, then the only remedy available to Plaintiff is for breach of contract. (Def. Mov. Br. at 6–7). In response, Plaintiff argues that applying the economic loss doctrine at the motion to dismiss stage would be premature and prejudicial because the validity of the contract is still at issue. (D.E. No. 9 ("Pl. Opp. Br.") at 6–8). Plaintiff also argues that the economic loss doctrine does not apply where, as here, the alleged misconduct is extrinsic to the relevant agreement. (*Id.* at 9–11).

The Court agrees with Plaintiff that dismissal of the tortious interference claims would be premature at this time. A party may "set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones." Fed. R. Civ. P. 8(d)(2); *Howmedica Osteonics Corp. v. NuVasive, Inc.*, No. 17-7906, 2018 WL 6011936 at *5 (D.N.J. Nov. 15, 2018). While a plaintiff may not ultimately recover on two inconsistent theories, both may be included in the complaint. *Sahoury v. Meredith Corp.*, No. 11-5180, 2012 WL 3185964, at *8. (D.N.J. Nov. 14, 2012). Moreover, because Defendant "ultimately will maintain" that the restrictive covenants in the Agreement are "not valid and enforceable" (Def. Mov. Br. at 7), at this stage of the ligation, it would be prejudicial to Plaintiff if the Court were to

7

dismiss the tort claims. *See IDT*, 2012 WL 4050298, at *6; *Howmedica*, 2018 WL 6011936 at *5.

Because the Court finds that Plaintiff's tortious interference claims are not barred at this time, it does not reach Plaintiff's additional argument that the economic loss doctrine does not apply because the tortious interference claims are based on facts extrinsic to the Agreement.

### ii. Sufficiency of Tortious Interference Claims

Alternatively, Defendant argues that Plaintiff fails to allege enough facts to support its claims for tortious interference with contract and with prospective economic advantage. (Def. Mov. Br. at 10–12). Because Defendant advances her arguments as to both tortious interference claims, the Court considers the sufficiency of the claims simultaneously.

To state a claim for tortious interference with contract under New Jersey law, a plaintiff must establish: "(1) the existence of the contract[;] (2) interference which was intentional and with malice; (3) the loss of the contract or prospective gain as a result of the interference; and (4) damages." *Amgro, Inc. v. Lincoln Gen. Ins. Co.*, 361 F. App'x 338, 345 n.9 (3d Cir. 2010). Moreover, to state a claim for tortious interference with prospective economic advantage a plaintiff must establish "(1) a plaintiff's existing or reasonable expectation of economic benefit or advantage; (2) the defendant's knowledge of that expectancy; (3) the defendant's wrongful, intentional interference with that expectancy; (4) the reasonable probability that the plaintiff would have received the anticipated economic benefit in the absence of interference; and (5) damages resulting from the defendant's interference." *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1167 (3d Cir.1993).

Defendant argues that Plaintiff's tortious interference claims should be dismissed because Plaintiff fails to adequately allege malice. (Def. Mov. Br. at 10). As used in a tortious interference claim under New Jersey law, the term malice is "defined to mean that the harm was inflicted

8

intentionally and without justification or excuse." *Printing Mart-Morristown v. Sharp Elecs. Corp.*, 563 A.2d 31, 37 (N.J. 1989). Malice "is not used in the literal sense requiring ill will toward the plaintiff." *Grande Vill. LLC v. CIBC Inc.*, No. 14-3495, 2015 WL 1004236, at *8 (D.N.J. Mar. 6, 2015). "The relevant inquiry is whether the conduct crosses the line from competition to tortious injury." *Jorgensen & Co. v. Sutherland*, No. 15-7373, 2016 WL 3585515, at *5 (D.N.J. June 30, 2016). "What is actionable is the luring away, by devious, improper and unrighteous means, of the customer of another." *Lightning Lube*, 4 F.3d at 1167 (internal quotation marks omitted).

The Court is not persuaded by Defendant's argument that the Amended Complaint fails to allege malice. Plaintiff alleges that Defendant (i) knew of Plaintiff's contractual relations with Clients A and B; (ii) had access to and used Plaintiff's confidential and proprietary information to service Clients A and B while at inVentiv; (iii) lied about the reason for her resignation from inVentiv and went to work for Equitas; (iv) secretly used the confidential information she obtained from inVentiv to service Clients A and B on behalf of Equitas; and (v) in particular used the confidential information while at Equitas to work on Project One—the same project she worked on for Client A while at inVentiv. (*See e.g.*, Am. Compl. ¶¶ 26, 75, 82, 84, 88–96, 119 & 126). Based on these allegations and others, it is plausible that Defendant inflicted harm "intentionally and without justification or excuse." *Printing Mart-Morristown*, 563 A.2d at 37. Defendant's argument that these and other allegations merely show that Defendant acted to advance her "own legitimate interests rather than to destroy [Plaintiff's] business" (Def. Mov. Br. at 11) is unavailing because Plaintiff alleges that Defendant had improper motives *and* used improper means. (Am. Compl. ¶¶ 120 & 126–127); *see Cargill Glob. Trading v. Applied Dev. Co.*, 706 F. Supp. 2d 563, 576 (D.N.J. 2010) ("[A] business-related explanation can justify a party's actions, so long as the business-related explanation justifies not only the defendant's motive and purpose, but also the

9

means that it employed."). Thus, the Court finds that Plaintiff adequately alleges malice.

Defendant also argues that Plaintiff fails to adequately allege conduct undertaken by Defendant, rather than by the Former Employees, that could constitute tortious interference. (Def. Mov. Br. at 12–14). However, as set forth above, the Amended Complaint includes sufficient allegations about Defendant's personal involvement in the overall scheme. (*See e.g.*, Am. Compl. ¶¶ 26, 75, 82, 84, 88–96, 119 & 126). In any event, the fact that some, but not all, of the allegations reference multiple Former Employees does not mean that Plaintiff fails to sufficiently plead its claims. *See Sunset Fin. Res., Inc. v. Redevelopment Grp. V, LLC*, 417 F. Supp. 2d 632, 645 (D.N.J. 2006); *Shulton, Inc. v. Optel Corp.*, No. 85-2925, 1986 WL 15617, at *16 (D.N.J. Sept. 29, 1986) ("The fact that [P]laintiff has not differentiated among defendants in some instances does not warrant dismissal of the pleading where plaintiff alleges that all of the defendants knew of and acted to facilitate the general scheme.").

Accordingly, Plaintiff adequately alleges malice, and the Court DENIES Defendant's motion to dismiss Counts II and III.

### B. Counts IV and V: Misappropriation of Trade Secrets

Counts IV and V request relief against Defendant for misappropriation of trade secrets under both the New Jersey Trade Secrets Act, N.J. Stat. Ann. § 56:1-1 *et seq* ("NJTSA") and the Defend Trade Secrets Act, 18 U.S.C. § 1836 *et seq.* ("DTSA"). (Am. Compl. ¶¶ 129–134 & 136–143). "Both the DTSA and the NJTSA require claimants to demonstrate (1) the existence of a trade secret, defined broadly as information with independent economic value that the owner has taken reasonable measures to keep secret, and (2) misappropriation of that secret, defined as the knowing improper acquisition and use or disclosure of the secret." *Par Pharm., Inc. v. QuVa Pharma, Inc.*, 764 F. App'x 273, 278 (3d Cir. 2019). At the motion to dismiss stage, Plaintiff need

not plead the precise information that constitutes the trade secret; nor is Plaintiff "required to make specific allegations regarding a defendant's use or disclosure of trade secret to state a *prima facie* misappropriation of trade secrets claim." *Corp. Synergies Grp., LLC v. Andrews*, No. 18-13381, 2019 WL 3780098, at *5 (D.N.J. Aug. 12, 2019); *Reckitt Benckiser Inc. v. Tris Pharma, Inc.*, No. 09-3125, 2011 WL 773034, at *3 (D.N.J. Feb. 28, 2011). Moreover, courts recognize "that information concerning Defendant[']s alleged use of the trade secret may, at this juncture, be solely within the Defendant[']s knowledge." *Reckitt Benckiser*, 2011 WL 773034, at *5.

Defendant generally argues that "Plaintiff fails to plead with the requisite specificity its claim for misappropriation of trade secrets under the NJTSA and the DTSA," and specifically contends that (i) Plaintiff fails to identify which specific trade secret Defendant misappropriated; and (ii) Plaintiff's allegations lack specificity as to what the *Defendant*, rather than the Former Employees, did to misappropriate any trade secrets. (Def. Mov. Br. at 15–18).

The Court finds that Plaintiff sufficiently states claims for misappropriation of trade secrets under the NJTSA and the DTSA. First, Plaintiff alleges that it has developed, accumulated, and maintained the following trade secrets and other confidential and proprietary information:

> business plans, account plans, business policies, client proposals, client deliverables, financial plans and forecasts, research, pricing information, business forecasts, product information, expert data and reports, business strategies, statements of work, market access strategies, value propositions, client and prospect lists and information, customer contact details, client usage, data sources, industry and company analyses, market information and analysis, methodologies, templates, [and] techniques.

(Am. Compl. ¶¶ 17 & 131). Plaintiff further alleges that (i) this information "is not generally known to the public, nor is it readily ascertainable" (*id.* ¶ 18); (ii) Plaintiff "has taken numerous steps to safeguard and limit access to such information" (*id.* ¶¶ 20–25); and (iii) this information "provides inVentiv with a significant advantage over competitors who do not know or use the information." (*id.* at ¶ 19). At this stage, these allegations suffice to show the existence of a trade

secret as required under the DTSA and NJSTA. *Reckitt Benckiser*, 2011 WL 773034, at *3 ("[A] claim of misappropriation of trade secret does not require specific pleading of the precise information that constitutes the trade secret in order to survive a motion to dismiss.") (internal quotation mark omitted); *DG3 N. Am., Inc. v. Labrador Regulated Info. Transparency, Inc.*, No. 14-5123, 2014 WL 5844340, at *4 (D.N.J. Nov. 12, 2014) ("New Jersey courts have recognized customer lists, pricing, marketing techniques and other information relating to business operations to constitute trade secrets."); *Corp. Synergies*, 2019 WL 3780098, at *4 (explaining that the DTSA and NJTSA recognize pricing information and marketing techniques as trade secrets).

Second, Plaintiff alleges "more than the mere possibility" that Defendant—not just other Former Employees—misappropriated its trade secrets. *Iqbal*, 556 U.S. at 679. Plaintiff alleges that Defendant "was routinely provided with relevant Confidential Information to enable . . . her to efficiently service inVentiv's clients and to develop new business on behalf of inVentiv." (Am. Compl. ¶ 26). Moreover, Plaintiff alleges that Defendant resigned from inVentiv and went to work for Equitas with French—who allegedly accessed Plaintiff's confidential information on his computer and inserted a USB device two days before his resignation—and together French and Defendant continued to work on Project One for Client A on behalf of Equitas. (*Id.* ¶¶ 70, 75, 88–96). Based on these factual allegations and considering Plaintiff's burden at the motion to dismiss stage, the Court finds that it is plausible that Defendant improperly disclosed or used Plaintiff's trade secrets. *See Corp. Synergies*, 2019 WL 3780098, at *5.

For these reasons, Plaintiff sufficiently states claims for misappropriation of trade secrets under the NJTSA and DTSA, and Defendant's motion to dismiss Counts IV and V is DENIED.

  **C. Count VI – Civil Conspiracy**

Count VI requests relief against Defendant for civil conspiracy. To state a valid claim for

conspiracy, Plaintiff must allege "(1) a combination of two or more persons; (2) a real agreement or confederation with a common design; (3) the existence of an unlawful purpose, or of a lawful purpose to be achieved by unlawful means; and (4) proof of special damages." *Morganroth & Morganroth v. Norris, McLaughlin & Marcus, P.C.*, 331 F.3d 406, 415 (3d Cir. 2003). Defendant urges that the Amended Complaint merely contains a recitation of the elements of conspiracy and does not sufficiently allege any agreement or overt act involving Defendant.[6] (Def. Mov. Br. at 19). The Court disagrees.

To start, "[a] plaintiff does not have to provide direct evidence of the agreement and can rely on circumstantial evidence." *Smith v. Honeywell Int'l Inc.*, No. 10-03345, 2011 WL 810065, at *5 (D.N.J. Feb. 28, 2011). Moreover, at the motion to dismiss stage, a complaint survives if the plaintiff plausibly alleges that "the alleged conspirators had a meeting of the minds and thus reached an understanding to achieve the conspiracy's objectives." *Prunkel v. Cty. of Bergen*, No. 17-5154, 2017 WL 5483165, at *6 (D.N.J. Nov. 15, 2017) (internal quotation mark omitted). In other words, "[c]oncrete proof of an agreement is not necessary to overcome a motion to dismiss." *Smith*, 2011 WL 810065, at *6.

Here, Plaintiff sets forth enough circumstantial evidence of an agreement between Defendant and the Former Employees to survive a motion to dismiss. Specifically, Plaintiff alleges, among other things, that (i) on November 3, 2015, French incorporated and began operating Equitas while still working for inVentiv (Am. Compl. ¶ 55); (ii) between January and July 2016, French, the Defendant, and other Former Employees resigned from inVentiv and provided false reasons for their resignation (*id.* ¶¶ 74–83); (iii) on July 23, 2016, two days before

---

[6] Defendant also argues that Plaintiff's conspiracy claim fails for want of an underlying tort claim. (Def. Mov. Br. at 19). Because the underlying tort claims have not been dismissed, the civil conspiracy claim will not be dismissed for want of an underlying claim.

French's official resignation, French accessed Plaintiff's confidential information on his work computer, and immediately inserted a USB device to take the information (*id.* ¶ 94); (iv) after all the Former Employees resigned, Plaintiff's revenue from Clients A and B fell significantly (*id.* ¶ 86); and (v) in January 2017, Plaintiff discovered a calendar invitation and an e-mail sent from Client A to Defendant and other Former Employees at Equitas e-mail addresses; the substance of the e-mail revealed that Client A and Equitas were working together on the same project that the Former Employees were working on with Client A while employed by Plaintiff (*id.* at 88–91). Based on these allegations, the Court finds that Plaintiff sufficiently pleads that Defendant and the Former Employees "had a meeting of the minds and thus reached an understanding to achieve the conspiracy's objectives." *Prunkel*, WL 5483165, at *6.

Defendant's argument that the complaint lacks allegations of an overt act by the Defendant is similarly unpersuasive. As just described, Plaintiff sets forth several examples of overt acts in furtherance of the conspiracy. (*see e.g.*, Am. Compl. ¶¶ 55, 74–83, 86, 88–91 & 94). Whether these overt acts were committed by the Defendant or her alleged co-conspirators is irrelevant. *See Morganroth & Morganroth*, 331 F.3d at 415 ("Not every conspirator must commit an overt act in furtherance of the conspiracy, so long as at least one does.").

Accordingly, the Court finds that Plaintiff sufficiently alleges an agreement and overt acts to state a claim for civil conspiracy and thus DENIES Defendant's motion to dismiss this claim.

## IV. Conclusion

For the foregoing reasons, the Court DENIES Defendant's motion to dismiss. An appropriate order accompanies this Opinion.

*s/Esther Salas*
**Esther Salas, U.S.D.J.**